# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CHRISTIAN COLON,

          Plaintiff,

 v.                    9:13-CV-1546 (DNH/ATB)

CAPTAIN HOLDRIDGE, et al,

         Defendants.

CHRISTIAN COLON, Plaintiff pro se
JUSTIN L. ENGEL, Ass't Att'y Gen. for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that on May 25, 2011, defendant K. Norcross filed a false misbehavior report against plaintiff because he refused to identify fellow inmate after he was "instructed" to do so by defendant Lieutenant Allen, during an interview which took place on the same day. (Amended Complaint ("AC") ¶ D at CM/ECF p.2)[1] (Dkt. No. 10). Plaintiff also claims that defendant Captain Holdridge denied plaintiff due process during his subsequent disciplinary hearing. (*Id.* at pp.3-4). Plaintiff does not request any form of relief in the amended complaint. However, the original complaint requested both monetary and injunctive relief. (Compl. ¶ 8 at p.9)

---

[1] The court will refer to the page numbers as assigned to the document by the court's electronic filing system (CM/ECF) unless otherwise specified.

(Dkt. No. 1).

Presently before the court is the defendants' motion to dismiss the complaint in its entirety for lack of jurisdiction and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. No. 25). For the following reasons, this court agrees with the defendants and will recommend dismissing plaintiff's complaint.

I. **Facts[2] and Procedural History**

On May 25, 2011, plaintiff was interviewed by a New York State Police Trooper regarding the death of inmate Poulsen. (AC at p.2). Plaintiff alleges that the trooper showed plaintiff a picture of an inmate named "Nunez," a/k/a "Scar" and asked plaintiff to identify this inmate as the person who "authorized the killing of inmate Poulsen." (*Id.*) Plaintiff was that in exchange for his "cooperation," he would be placed in Protective Custody. Plaintiff states that he told the trooper that he did not know if "that was a fact," and refused to "lie about the situation." (*Id.*) Plaintiff states that defendant Lieutenant Allan then entered the room, and instructed plaintiff to identify Scar or plaintiff would be taken to "Unit 14 (SHU) and would regret not cooperating."[3] (*Id.*)

After plaintiff continued to refuse to identify Scar, plaintiff was taken to Unit 14 and issued a misbehavior report the same day. (*Id.* at 3). In the misbehavior report, which was written by defendant Norcross, plaintiff was charged with assault,

---

[2] This court is assuming the truth of the facts as stated in the amended complaint only for purposes of this motion.

[3] "SHU" refers to the Special Housing Unit, a disciplinary unit in the facility.

2

possession of a weapon, and violent conduct.[4] (*Id.*) The misbehavior report was based upon information given to defendant Norcross by a "confidential informer," who stated that he "directly observed" plaintiff making a "slashing motion" with his arms. (*Id.*) Plaintiff claims that the confidential informant's statement was inadequate in various ways. (*Id.*)

Defendant Captain Holdridge was assigned as the hearing officer for plaintiff's disciplinary hearing. Plaintiff claims that defendant Holdridge denied him due process at the hearing. Plaintiff alleges that he requested five witnesses to testify on his behalf, but that defendant Holdridge denied all but one of the witnesses. Plaintiff claims that two of the witnesses were denied because they were not present during the incident and two witnesses were denied because they "refused to testify." (*Id.* at 4). However, plaintiff alleges that the witnesses who were not present during the incident had information from other inmates would not come forward for fear of reprisal. Plaintiff also claims that the two other witnesses "stated that they never refused to testify." (*Id.*)

Plaintiff was found guilty and sentenced to forty-eight month in SHU and forty-eight months loss of good time. Plaintiff appealed the disciplinary hearing, but the result was affirmed at all levels of the disciplinary process. Plaintiff states that he filed an Article 78 proceeding in the Appellate Division, Third Department which was denied on September 20, 2012. (AC at p.6).

Plaintiff filed this action on December 16, 2013. (Dkt. No. 1). After allowing

---

[4] Although it is not completely clear from the amended complaint, the court assumes that plaintiff's charges were also related to the assault which ultimately caused inmate Poulson's death.

3

plaintiff to resolve an issue with his in forma pauperis ("IFP") application, the court issued an order dismissing the New York State Police from the action; dismissing defendants Annucci and LaValley without prejudice for lack of personal involvement; denying appointment of counsel, and directing plaintiff to file an amended complaint if he wished the complaint to proceed.[5] (Dkt. No. 8). Plaintiff filed this amended complaint on May 5, 2014. (Dkt. No. 10).

On September 30, 2014, Judge David N. Hurd accepted the amended complaint for filing, and construed the amended complaint as raising the following claims:

(1) a claim that defendant Norcross issued plaintiff a false misbehavior report.

(2) First Amendment retaliation claims against defendants Allen and Norcross.

(3) a Fourteenth Amendment Due Process claim against defendant Holdridge.

(Dkt. No. 11 at 3). Judge Hurd dismissed defendants Annucci and LaValley with prejudice; and dismissed the false misbehavior report claim as against defendant Norcross. He allowed the First Amendment retaliation claim to survive as against defendants Norcross and Allan. (Dkt. No. 11). Judge Hurd also found that plaintiff's due process claim as against defendant Holdridge could survive "if and when" plaintiff filed the required waiver pursuant to *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a section 1983 action, seeking damages is not cognizable if a decision in favor of the

---

[5] Annucci, LaValley, and the New York State Police were the only three defendants in the original complaint. (Dkt. No. 1).

4

plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87. This is referred to as the "favorable termination rule." In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the rationale in *Heck* to section 1983 challenges to prison disciplinary proceedings in which a decision in plaintiff's favor would necessarily reverse the administrative decision revoking a plaintiff's good-time credits, thereby affecting the length of the plaintiff's confinement. 520 U.S. at 644.

In *Peralta*, the Second Circuit held that *Heck's* "favorable termination" rule was not an absolute bar to a prisoner who was subject to "mixed sanctions" as the result of a disciplinary hearing. 467 F.3d at 104. "Mixed sanctions" are defined as "sanctions that affect both (a) the duration of [plaintiff's] imprisonment and (b) the conditions of his confinement." *Id.* The loss of good time affects the duration of plaintiff's confinement, while the SHU sentence only affects the conditions of plaintiff's confinement. The Second Circuit held in *Peralta*, that an inmate subject to mixed sanctions could proceed separately under section 1983 with a challenge to the sanctions which affect the conditions of his confinement only if he was willing to "forgo once and for all any challenge to any sanctions that affect the duration of his confinement." *Id.* This has become known as a *Peralta* Waiver.

In this case, Judge Hurd ordered plaintiff to advise the court in writing if he wished to forego his good time challenge. (Dkt. No. 11). On October 14, 2014, plaintiff filed his *Peralta* waiver, and on October 27, 2014, Judge Hurd acknowledged

5

plaintiff's waiver and dismissed all claims relating to good time. (Dkt. Nos. 12, 13). On November 13, 2014, plaintiff filed a letter, indicating that he did not understand the import of the *Peralta* waiver, and that he wished to continue to challenge his good time. (Dkt. No. 15). In response to plaintiff's letter, on December 23, 2014, Judge Hurd issued an order explaining to plaintiff what would be the result of failing to sign the *Peralta* waiver.[6] (Dkt. No. 24). The court gave plaintiff two options. The first option was to keep the waiver in place and continue with the due process and retaliation claims, or withdraw his waiver and have the court dismiss his due process claims in their entirety as against defendant Holdridge while proceeding only with the First Amendment retaliation claims against defendants Allen and Norcross. (Dkt. No. 24 at 4).

On January 5, 2015, defendants filed the current motion to dismiss. (Dkt. No. 25). On January 7, 2015, plaintiff filed a letter, requesting permission to file and "amended complaint." (Dkt. No. 27). On January 12, 2015, plaintiff filed his "Waiver," selecting "Option # 1" from Judge Hurd's December 23, 2014 Order. (Dkt. No. 28). On January 16, 2015, I issued a TEXT ORDER in response to plaintiff's January 7, 2015 letter. (Dkt. No. 29). In my TEXT ORDER, I denied plaintiff's January 7, 2015 letter-motion without prejudice and gave plaintiff the opportunity to file a "motion to amend," including a "proposed amended complaint," in compliance with the local rules. (*Id.*) On January 16, 2015, Judge Hurd also acknowledged plaintiff's renewed *Peralta*

---

[6] The court was concerned that plaintiff did not understand that if he did not sign the *Peralta* waiver, the court would be forced to dismiss his due process claims without prejudice as against defendant Holdridge because a decision in plaintiff's favor would have affected the loss of good time.

6

waiver. (Dkt. No. 30). Notwithstanding my order, giving plaintiff the opportunity to move to amend, he has failed to do so, and he has also failed to respond to the defendants' motion to dismiss.

## II. Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents

incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties); *Farid v. Bouey*, 554 F. Supp. 2d 301, 313-14 (N.D.N.Y. 2008) (taking judicial notice of documents relating to plaintiff's prior Article 78 proceeding in State Court).

### III. **Qualified Immunity**

#### A. **Legal Standards**

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). In evaluating whether a right was clearly established at the time the defendant acted, the court must determine: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable official would have understood that his or her acts were unlawful." *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citations omitted). Even if the constitutional privileges were clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

### B. Application

Plaintiff claims that defendants Allan and Norcross retaliated against him by threatening him and then filing a false misbehavior report because he refused to identify the inmate who allegedly ordered the "hit" on inmate Poulsen.

In order to establish a claim of retaliation for the exercise of a First Amendment right, plaintiff must show that he engaged in constitutionally protected speech or conduct, and that the protected activity was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *see also Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997).

Defendants Allan and Norcross argue that they are entitled to qualified immunity

because it was not, and still is not, well-established that an inmate has a First Amendment right not to become a "snitch." In *Allah v. Juchenwioz*, 176 F. App'x 187 (2d Cir. 2006), the Second Circuit affirmed a district court's finding that defendant officials were entitled to qualified immunity because in 1993 (when the incident occurred), it was not well established that the right not to become an informant was protected under the First Amendment. *Id.* at 188. The Second Circuit specifically held that

> [f]or purposes of this appeal, we need not and do not address whether the District Court was correct in its previous assessment that an inmate has a constitutional right not to become an informant. Even assuming *arguendo* that such a right existed, it was not "clearly established" at the time when the challenged conduct occurred in 1993. Neither the Supreme Court nor this Court has ever held that a prisoner enjoys a constitutional right not to become an informant.

*Id.* at 189. The court also specifically noted that neither of the cases cited by the District Court in *Allen* as supporting its finding were decided in 1993, and that one of the cases only "assumed" without deciding that such a right existed. *Id.* at 189 & n.1 (citing *inter alia Jackson v. Johnson*, 15 F. Supp. 2d 341 (S.D.N.Y. 1998); *Watson v. McGinnis*, 964 F. Supp. 127 (S.D.N.Y. 1997)). In *Willey v. Kirkpatrick*, 664 F. Supp. 2d 218, 223-24 (W.D.N.Y. 2009), the court stated that "it is unclear whether there is a constitutional right 'not to snitch.'" *Id.* (citing *Allah v. Juchenwioz*, 176 Fed. Appx. at 189).

As recently as February of 2015, it has been held that the refusal to become an

10

informant is not protected speech.[7] *Burns v. Martuscello*, No. 9:13-CV-486, 2015 WL 541293, at *1 (N.D.N.Y. Feb. 10, 2015) (adopting Rep't-Rec. of Magistrate Judge Christian Hummel). Defendants Norcross and Allen, who are alleged to have written the false misbehavior report in 2011, are entitled to qualified immunity because it was not, and still is not, well-established law that there is a constitutional right to refuse to become an informant. *See also Sowell v. Weed*, No. 07-CV-6355, 2013 WL 3324049, at *14 (W.D.N.Y. July 1, 2013) (affording qualified immunity to defendants who were alleged to have retaliated against a plaintiff for his refusal to become an informant in 2003) (citing *Allah, supra*). Thus, even if the court assumes that defendants Allen and Norcross charged plaintiff with participation in the incident because he refused to identify "Scar," defendants are entitled to dismissal of the action against them based on qualified immunity.

## IV. Collateral Estoppel

### A. Legal Standards

The doctrine of collateral estoppel[8] provides that once a court has actually and

---

[7] If the refusal to become a snitch is *not* constitutionally protected, then plaintiff would not be able to establish the first requirement in considering the merits of a retaliation claim.

[8] Res judicata includes two concepts: claim preclusion and issue preclusion. Issue preclusion is also known as collateral estoppel. *Rivera v. City of New York*, __ F. App'x __, 2014 WL 5463320, at *2 (2d Cir. Oct. 29, 2014). In claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. The doctrine bars subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) the previous action involved the plaintiff or those in privity with him, and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). Generally, claim preclusion does not apply to bar section 1983 actions after an Article 78 proceeding. *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987); *see also Leo v. N.Y.C. Dep't of Educ.*, No. 13 CV 2271(RJD)(JMA), 2014 WL 6460704, at

11

necessarily decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the first case. *Rivera v. United States*, No. 3:10-CV-1970, 2012 WL 3043110, at *2 n.5 (D. Conn. 2012) (discussing collateral estoppel) (citations omitted). Collateral estoppel is applicable if (1) the issues in both proceedings are identical; (2) the issue of law or fact was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *Wade v. City of Kingston*, No. 1:13-CV-623, 2014 WL 4897244, at *4 (N.D.N.Y. Sept. 30, 2014) (citing *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted)). *See also NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184-85 (2d Cir. 2011) (discussing factors considered for collateral estoppel).

## B. Application

Plaintiff concedes that he has litigated his due process claims in the Appellate Division, Third Department as an Article 78 proceeding, which was denied on September 20, 2012. (AC at p.6). The court may take judicial notice of state court decisions and matters of public record. *Pacherille v. Burns*, No. 3:13–CV–789

---

*4 (E.D.N.Y. Nov. 17, 2014) (res judicata doctrine did not apply to plaintiff's § 1983 claims because plaintiff could not have received damages for violations of his civil rights in his prior Article 78 proceeding). In this case, defendants do not argue that claim preclusion applies. Thus, this court will confine its discussion to collateral estoppel.

(GLS/DEP), 2014 WL 3040420, at *1 (N.D.N.Y. July 3, 2014) (quoting *Johnson v. Pugh*, No. 11–CV–385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013)). The Court may thus take judicial notice of decisions from the Appellate Division. *See Stewart v. Transp. Workers Union of Greater N.Y., Local 100*, 561 F. Supp. 2d 429, 435–36 (S.D.N.Y. 2008). "It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Shell v. Brun*, 362 F. Supp. 2d 398, 400 (W.D.N.Y. 2005) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984)). *See also Vann v. Fischer*, No. 11 Civ.1958(KPF), 2014 WL 4188077, at *25 (S.D.N.Y. Aug. 25, 2014) (plaintiff barred in § 1983 action from relitigating issues concerning bias and due process violations during prison disciplinary proceeding that were previously raised during Article 78 proceeding).

Defendants argue that plaintiff's due process claim against defendant Holdridge is barred by collateral estoppel because plaintiff litigated and lost a challenge, raising the identical issues in his Article 78 proceeding. Defendants have attached the plaintiff's state court documents as exhibits to their motion. (Dkt. No. 25-4). A review of plaintiff's Article 78 proceeding confirms the defendants' argument.

In his Article 78 proceeding, plaintiff stated that on May 17, 2011, the day of the assault on inmate Poulsen, plaintiff was speaking with another inmate "in the back of A-4 Company," when inmate Poulsen was assaulted in the middle of A-4 Company. (Dkt. No. 25-4 at CM/ECF pp. 23-24) (Plaintiff's Article 78 Petition). Plaintiff claimed that he did not witness the attack, was not looking in that direction, and he was not wearing his glasses, so he had no idea who committed the assault. (*Id.* at p.24).

13

Plaintiff stated that he walked by inmate Poulsen's body on the way back to A-1 Company, plaintiff's housing unit, and that there were seventy other inmates around. Plaintiff states that he never stopped "at" the body. However, at plaintiff's disciplinary hearing, defendant Holdridge was given the statement of a confidential informant, who stated that he saw plaintiff standing over inmate Poulsen's body "making a slashing motion over him with a can top." (*Id.*) Plaintiff's witness, Teofilo Diaz testified that he "cut" inmate Poulsen with a can top and then threw the top away in the garbage can. Inmate Diaz provided a sworn affidavit admitting that he committed the assault. (*Id.* at p.25). Diaz was also charged with the assault, found guilty, and was sentenced to eight years in SHU and loss of "everything." (*Id.*)

Plaintiff challenged the confidential informant's statement because the confidential informant could not state where plaintiff had been prior to, or after the assault, did not know what happened to the can top, what clothes plaintiff was wearing, or anything more specific about plaintiff. The informant stated only that he "knew" plaintiff from A-Block. (*Id.*) Plaintiff alleged that the hearing officer refused to ask the informant if he "had a problem" with plaintiff, "which would give him a reason to lie," or if the informant had ever been a suspect in the assault himself, which would give him "a reason . . . to deflect blame on someone else." (*Id.*)

Plaintiff claimed that the inmate had never been used as an informant before, so that defendants had no knowledge of his reliability or credibility, based on past experience. (*Id.* at p.26). Plaintiff alleged that defendant Holdridge never established a motive for the assault. Plaintiff also claimed that defendant Holdridge improperly

14

denied plaintiff's requested witnesses and that defendant Holdridge was biased and unfair throughout the hearing. Plaintiff mentioned that he and his cell were searched, but that no contraband was ever recovered.

Plaintiff's causes of action in the Article 78 proceeding were listed as follows:

(1) The confidential informant was not credible or reliable.

(2) The hearing officer was unfair, arbitrary, capricious, and "administrated for the purpose of retaliation."

(3) Petitioner was denied his inmate witnesses.

(*Id.* at pp.27-32). In the description of his second claim, plaintiff mentioned that he believed the disciplinary were filed against him because of his failure to cooperate in the investigation, and because both plaintiff and Teofilo Diaz, who admitted assaulting inmate Poulsen, were "Dominican." Plaintiff stated that "[t]he administration felt Petitioner's inability to tell them anything was willfully withholding information in a murder investigation when the truth is the Petitioner really didn't know anything and didn't have anything to do with the incident." (*Id.* at p.31). Plaintiff essentially raised the same due process claims in his Article 78 proceeding as he does in this federal action.

The Appellate Division affirmed the disciplinary hearing, and the New York Court of Appeals denied leave to appeal. *Matter of Colon v. Fischer*, 98 A.D.3d 1176, 950 N.Y.S.2d 821 (3d Dep't 2012), *lv. denied*, 20 N.Y.3d 857, 960 N.Y.S.2d 439 (2013). The Appellate Division held that "[t]he misbehavior report, testimony of the corrections officer who prepared it[,] and the confidential testimony and documents

found crdible by the Hearing Officer provide *substantial evidence* supporting the determination of guilt."⁹ 98 A.D.3d at 1176 (emphasis added) (citations omitted). "Although petitioner and his inmate witness denied that petitioner participated in the assault, this created a credibility issue for the Hearing Officer to resolve." *Id.*

The Appellate Division also held that it was "unpersuaded" by the plaintiff's "procedural claims." *Id.* The court specifically stated that the Hearing Officer did not err in denying plaintiff's witnesses "who could not provide relevant or material proof." *Id.* at 1177. The court stated that "our review of the record demonstrates that petitioner's guilt was premised upon the evidence presented at the hearing, rather than any alleged hearing officer bias." *Id.* (citations omitted) Finally, the court stated that it "examined petitioner's remaining claims," including his challenge to the denial of his request for the confidential informant's testimony, and find them to be unpersuasive." *Id.* It is clear that the Appellate Division decided all of plaintiff's claims and found them to be meritless.

Thus, for purposes of the collateral estoppel analysis, this court finds that plaintiff's due process claims in this action are identical to those he raised in the Appellate Division; the issues were "actually decided" in the Appellate Division; plaintiff had a full and fair opportunity for litigation in the Appellate Division

---

⁹ The court must note that the state court standard for sufficiency of the evidence in a prison disciplinary hearing is "substantial evidence," whereas the standard in a federal constitutional due process challenge is only "some," or "a modicum" of evidence. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence standard). Thus, the state court standard is more favorable to the inmate plaintiff because more evidence is required to sustain the disciplinary determination than under federal due process standards.

16

proceeding; and the issues litigated in the Appellate Division were necessary to support a valid and final judgment on the merits. Plaintiff cannot now relitigate in a section 1983 action, the claims that he lost in the Appellate Division.[10] Plaintiff's due process claims as against defendants Norcross and Holdridge may be dismissed.

## V.  *Rooker-Feldman*

### A.  Legal Standards

A challenge under the *Rooker Feldman*[11] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

### B.  Application

Defendants also argue that plaintiff's due process claims are barred by the

---

[10] The application of collateral estoppel in civil rights actions under section 1983 is in contrast to the "traditional exception to res judicata for habeas corpus review." *See Allen v. McCurry*, 449 U.S. 90, 98 n.12 (1980). Plaintiff in this case has not brought an action for habeas review and has waived any challenge to his good time under *Peralta*, thus, no exception to the application of collateral estoppel applies.

[11] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

17

*Rooker Feldman* doctrine because plaintiff is essentially trying to have this court review the adverse decision he received in the Appellate Division. Plaintiff has raised all the same claims that he raised in the Appellate Division challenging the disciplinary hearing. If this court were to review the claims that plaintiff brings in this case and find in his favor, the court would essentially be overturning the Appellate Division's decision. The court is barred from doing so by *Rooker Feldman*.

## VI. Opportunity to Amend

### A. Legal Standard

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, __ F. Supp. 3d __, 2015 WL 365964, at *8 (E.D.N.Y. Jan. 28, 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000). In *Cuoco*, the Second Circuit held that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint.")

### B. Application

In this case, the court finds that any attempt by plaintiff to amend his complaint would be futile. Plaintiff has already attempted to amend his complaint once. If the court accepts this recommendation and dismisses the retaliation claim against defendants Allen and Norcross based on qualified immunity, plaintiff will not be able to amend this complaint as against these two defendants. If the court accepts the

recommendation to dismiss the due process claim against defendants Norcross and Holdridge based upon collateral estoppel or *Rooker Feldman*, plaintiff will be unable to amend his complaint to state a due process claim against these two individuals. Thus, this court recommends dismissal of the complaint with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 25) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 20, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge